# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

**ARLINGTON TECHNOLOGIES LLC,**

　　　　**Plaintiff,**

v.

**RINGCENTRAL, INC.,**

　　　　**Defendant.**

**Before: Jennifer Choe-Groves, Judge**

**Court No. 1:25-cv-00613-JCG**

## OPINION AND ORDER

[Granting in part and denying in part Defendant's Motion to Dismiss.]

Dated: March 10, 2026

Stephen B. Brauerman and Ronald P. Golden, II, Bayard, P.A., of Wilmington, DE; Patrick J. Conroy, Justin B. Kimble, Jon Rastegar, and Nathan L. Levenson, Nelson Bumgardner Conroy PC, of Dallas, TX. Attorneys for Plaintiff Arlington Technologies LLC.

Jennifer Ying, Karen Jacobs, and Ben Yenerall, Morris, Nichols, Arsht & Tunnell LLP, of Wilmington, DE; Karineh Khachatourian, David T. Xue, and Trevor T. Giampaoli, KXT LAW, LLP, of Redwood City, CA. Attorneys for Defendant RingCentral, Inc.

Choe-Groves, Judge: Plaintiff Arlington Technologies LLC ("Plaintiff" or

"Arlington Tech.") filed this case against Defendant RingCentral, Inc.

("Defendant" or "RingCentral") alleging infringement of U.S. Patent Numbers

7,366,110 ("'110 Patent"), 7,441,141 ("'141 Patent"), 8,145,945 ("'945 Patent"),

9,026, 836 ("'836 Patent"), 7,668,304 ("'304 Patent"), 10,630,733 ("'733 Patent"),

9,432,517 ("'517 Patent"), and 9,094,572 ("'572 Patent") (collectively, "Asserted

Patents").  Pl.'s First Am. Compl. Pat. Infringement ("Am. Compl.") (D.I. 16); see

Am. Compl. at Ex. 1 ("'110 Patent") (D.I. 16-1); Am. Compl. at Ex. 2 ("'141

Patent") (D.I. 16-2); Am. Compl. at Ex. 3 ("'945 Patent") (D.I. 16-3); Am. Compl.

at Ex. 4 ("'836 Patent") (D.I. 16-4); Am. Compl. at Ex. 5 ("'304 Patent") (D.I. 16-

5); Am. Compl. at Ex. 6 ("'733 Patent") (D.I. 16-6); Am. Compl. at Exs. 7, 8

("'517 Patent") (D.I. 16-7, 16-8); Am. Compl. at Ex. 9 ("'572 Patent") (D.I. 16-9).

Before the Court is Defendant RingCentral, Inc.'s Motion to Dismiss the

First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to

Dismiss") (D.I. 19).  See Def. RingCentral, Inc.'s Opening Br. Supp. Mot. Dismiss

First Am. Compl. ("Def.'s Br.") (D.I. 20).  Plaintiff opposed the motion, and

Defendant filed a reply brief.  Pl's Resp. Opp. Def.'s Mot. Dismiss ("Pl.'s Resp.

Br.") (D.I. 22); Def. RingCentral, Inc.'s Reply Supp. Mot. Dismiss First Am.

Compl. ("Def.'s Reply Br.") (D.I. 23).

For the reasons discussed below, Defendant's Motion to Dismiss is granted

in part and denied in part.

## BACKGROUND

Arlington Tech. is a limited liability company with its principal place of

business in Allen, TX.  Am. Compl. at ¶ 1.  Arlington Tech. is the owner of all

right, title, and interest in the Asserted Patents.  Id. at ¶ 35.  The First Amended

Complaint alleges that RingCentral is a Delaware corporation with its principal

place of business in Belmont, CA, and is a multinational information technology

company that develops and provides cloud-based communication and collaboration

services.  Id. at ¶¶ 2–3.  Arlington Tech. claims that RingCentral sells its products

and phone, messaging, and video services in Delaware.  Id. at ¶ 3.  RingCentral

allegedly operates the websites RingCentral.com and Support.RingCentral.com,

where it markets, offers, distributes, and provides technical support for its services.

Id. at ¶ 4.

Arlington Tech. asserts that RingCentral has and continues to directly and

indirectly infringe one or more claims of the Asserted Patents in violation of 35

U.S.C. § 271.  Id. at ¶¶ 50, 69, 88, 106, 124, 142, 163, 180.  The following

products are identified as directly infringing the Asserted Patents: Webinar and

RingSense ("'110 Accused Products") ("'141 Accused Products") ("'945 Accused

Products") ("'836 Accused Products"); Video Meetings and Rooms ("'304

Accused Products") ("'733 Accused Products") ("'572 Accused Products"); and

RingSense ("'517 Accused Product") (collectively, "Accused Products").  Id. at

¶¶ 51, 70, 89, 107, 125, 143, 164, 181.  Arlington Tech. alleges that RingCentral

indirectly infringed the Asserted Patents by induced and contributory infringement

in violation of 35 U.S.C. §§ 271(b)–(c).  Id. at ¶¶ 61–62, 80–81, 98–99, 116–17,

134–35, 155–56, 172–73, 188–89.  Arlington Tech. claims that it has complied

with the requirements of 35 U.S.C. § 287 to warrant recovery of pre-suit damages

and that RingCentral's continued willful infringement warrants enhanced damages

under 35 U.S.C. § 284.  Id. at ¶¶ 45, 63, 82, 100, 118, 136, 157, 174, 190.

## I.   The Asserted Patents and the Accused Products

### A.   The '110, '141, '945, and '836 Patents (Apache Kafka Patents)

The '110 Patent was issued by the United States Patent and Trademark

Office ("USPTO") on April 29, 2008, and is titled "Method and apparatus for

merging call components during call reconstruction."  Id. at ¶ 36; see '110 Patent.

The '141 Patent was issued on October 21, 2008 by the USPTO and is titled

"Backup of network devices."  Id. at ¶ 37; see '141 Patent.  The '945 Patent was

issued on March 27, 2021 by the USPTO and is titled "Packet mirroring between

primary and secondary virtualized software images for improved system failover

performance."  Id. at ¶ 38; see '945 Patent.  The '836 Patent was issued on May 5,

2021 by the USPTO and is titled "Call restoration in response to application

failure."  Id. at ¶ 39; see '836 Patent.

Arlington Tech. alleges that RingCentral designs, offers for sale, uses, and

sells services and products such as Webinar and RingSense that directly infringe

the '110, '141, '945, and '836 Patents.  Id. at ¶¶ 51, 70, 89, 107.  Arlington Tech.

claims that RingCentral licenses and uses Apache Kafka in the '110, '141, '945,

and '836 Accused Products.  Id.  The First Amended Complaint alleges that

RingCentral "uses Apache Kafka, including Apache Kafka streams, in the Accused

Products" in Counts I–IV.  Id. at ¶¶ 52, 71, 90, 108.  For Counts I–IV, to show that

RingCentral incorporates Apache Kafka in the Accused Products, the First

Amended Complaint includes exemplary images of flow charts and links showing

open source licenses that Arlington Tech. attributes to RingCentral, which

allegedly show that RingCentral's Accused Products infringe the '110, '141, '945,

and '836 Patents.  Id. at ¶¶ 51–52, 70–71, 89–90, 107–08.  Arlington Tech. argues

that more evidence of Webinar and RingSense's use of Apache Kafka and Apache

Kafka streams will be found in the source code that is not publicly available.  Id. at

¶¶ 52, 71, 90, 108.

In pleading induced infringement, Arlington Tech. alleges that RingCentral

has known of the '110, '141, '945, and '836 Patents since at least March 8, 2024,

when Arlington Tech. contacted RingCentral about infringement and since the

filing of the Complaint.  Id. at ¶¶ 60–61, 79–80, 97–98, 115–16.  Arlington Tech.

states that RingCentral contributes to infringement, under 35 U.S.C. § 271(c), of

one or more claims of the '110, '141, '945, and '836 Patents through distributors,

customers, subsidiaries, importers, and consumers that use, import, purchase, or

sell the '110, '141, '945, and '836 Accused Products.  Id. at ¶¶ 62, 81, 99, 117.

Arlington Tech. claims that Webinar and RingSense implement the following

features that cause them to lack any substantial non-infringing use: a custom Kafka

(1) broker migration feature that enables real-time failover; (2) automatic backup

feature that enables dynamic distributed fault tolerance; (3) failover and traffic

mirroring feature that enables real-time failover; and (4) session recovery feature

that enables communication continuity.  Id. at ¶¶ 62, 81, 99, 117.

### B.    The '304, '733, '572 Patents

The '304 Patent was issued by the USPTO on February 23, 2010, and is

titled "Display hierarchy of participants during phone call."  Id. at ¶ 40; see '304

Patent.  The '733 Patent was issued by the USPTO on April 21, 2020, and is titled

"Generating recording access permissions based on meeting properties."  Id. at

¶ 41; see '733 Patent.  The '572 Patent was issued by the USPTO on July 28, 2015,

and is titled "Systems and methods to duplicate audio and visual views in a

conferencing system."  Id. at ¶ 43; see '572 Patent.

In Counts V, VI, and VIII, Arlington Tech. alleges that RingCentral uses,

makes, offers for sale, sells, and imports products such as Video Meetings and

Rooms that directly infringe the '304, '733, and '572 Patents.  Id. at ¶¶ 126, 144,

182.  The First Amended Complaint claims that these Accused Products contain

specific instructions, such as source code and configuration files, that cause them

to infringe the '304, '733, and '572 Patents.  Id. at ¶¶ 134, 155, 188.  Arlington

Tech. claims that the '304, '733, and '572 Patents are infringed because the Video

Meetings and Rooms incorporate the fundamental technologies covered by the

Asserted Patents.  Id. at ¶¶ 126, 144, 182.  The First Amended Complaint states

that the Accused Products perform a method of enhancing a conference call that

infringes Claim 1 of the '304 Patent, perform a method of operating a meeting

publishing system to generating publishing permissions that infringes Claim 8 of

the '733 Patent, and comprise a conferencing system with an authentication

module configured to establish a communication session having a plurality of

participants that infringes Claim 1 of the '572 Patent.  Id. at ¶¶ 127, 145, 183.

In pleading induced infringement, Arlington Tech. alleges that RingCentral

has known of the '304, '733, and '572 Patents since at least March 8, 2024, when

Arlington Tech. contacted RingCentral about infringement and since the

Complaint was filed.  Id. at ¶¶ 133, 154, 187.  Arlington Tech. argues that

RingCentral contributes to infringement of one or more claims of the '304, '733,

and '572 Patents through those who use, import, purchase, or sell the '304, '733,

and '572 Accused Products.  Id. at ¶¶ 135, 156, 189.  Arlington Tech. claims that

the Video Meetings and Rooms implement the following features that cause them

to lack any substantial non-infringing use: a custom (1) hierarchal ranking structure

that enables enhanced video conferencing; (2) meeting publishing system that

records meetings and enables authorized access to non-invitee co-workers; and

(3) multi-user screen sharing feature.  Id.

### C.    The '517 Patent

The '517 Patent was issued by the USPTO on August 30, 2016, and is titled

"Methods, apparatuses, and systems for generating an action item in response to a

detected audio trigger during a conversation." Id. at ¶ 42; see '517 Patent.  In

Count VII, Arlington Tech. alleges that RingCentral uses, offers for sale, sells, and

imports RingSense that directly infringes on the '517 Patent.  Id. at ¶ 165.

Arlington Tech. argues that RingSense performs a method comprised of

monitoring by the processor of audio content of a conversation having a plurality

of participants that infringes Claim 8 of the '517 Patent.  Id. at ¶ 166.  In pleading

induced infringement, Arlington Tech. states that RingCentral has known about the

'517 Patent since at least March 8, 2024, as well as the filing date of the

Complaint.  Id. at ¶ 171.  Arlington Tech. argues that RingCentral contributes to

infringement of one or more claims of the '517 Patent by others that use, import,

purchase, or sell RingSense.  Id. at ¶ 173.  Arlington Tech. claims that RingSense

implements a custom audio listening system that detects an audio trigger and

generates an action item to notify participants that causes the product to lack any

substantial non-infringing use.  Id.

## II.    Pre-Suit Communications

Arlington Tech. alleges that it attempted to engage RingCentral in licensing

discussions related to the Asserted Patents on March 8, 2024, and sent a list of

Arlington Tech.'s patent portfolio and the Asserted Patents that RingCentral's

"Webinar, RingSense, RingCentral App, RingCentral Breakout Rooms, and

RingCentral Video Meetings products" allegedly infringe.  Id. at ¶ 18.  Plaintiff's

correspondence to RingCentral allegedly included the following:

> Based on our review, we believe that RingCentral's business requires a
> license because RingCentral infringes Arlington's patents.    An
> exemplary listing of specific patents and corresponding infringing
> products and functionalities appears in Attachment B.    We have
> prepared additional materials for RingCentral to review as part of this
> discussion, including a data room with detailed evidence of use charts,
> copies of the patents and file histories, and an overview presentation
> directed specifically at RingCentral.  We propose to provide access to
> this data room to RingCentral immediately; please contact us for access
> information.  Please respond by April 8, 2024, and let us know whether
> RingCentral is willing to enter into bilateral discussions concerning
> Arlington's patent portfolio.  Our goal is to engage in good faith, swift,
> productive discussions outside of litigation.

Id.  Arlington Tech. corresponded multiple times via email to follow up with

RingCentral and included links to claim charts.  Id. at ¶ 19.  RingCentral responded

on April 22, 2024, and both Parties began communicating about the matter.  Id. at

¶¶ 20–23.  Arlington Tech. claims that RingCentral downloaded the claim charts

for the Asserted Patents on or about October 3, 2024, and February 7, 2025.  Id. at

¶¶ 24–31.  Any discussions between Arlington Tech. and RingCentral from

February 2025 to the filing of this action are covered by the Parties' non-disclosure

agreement.  Id. at ¶ 23.

Arlington Tech. filed its Complaint on May 16, 2025, alleging infringement of the '110, '141, '945, and '836 Patents, and seeking monetary damages.  See Compl. (D.I. 1).  RingCentral filed Defendant RingCentral, Inc.'s Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) on July 9, 2025.  See Def. RingCentral, Inc.'s Mot. Dismiss Pl.'s Compl. Fed. R. Civ. P. 12(b)(6) (D.I. 9).  Arlington Tech. filed the First Amended Complaint on August 13, 2025, alleging direct, indirect, and willful infringement of the Asserted Patents.  See Am. Compl.  On October 1, 2025, RingCentral filed its Motion to Dismiss Arlington Tech.'s First Amended Complaint, arguing that Arlington Tech. failed to adequately plead direct, indirect, or willful infringement.  See Def.'s Br.  The Court held oral argument on February 19, 2026.  Oral Order (Feb. 19, 2026) (D.I. 25).

## LEGAL STANDARD

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338, which grant the Court jurisdiction over civil actions relating to patents, plant variety protection, copyrights, and trademarks.  28 U.S.C. §§ 1331, 1338.

Federal Rule of Civil Procedure 8(a) requires that pleadings contain a short and plain statement of the claim showing that the pleader is entitled to relief.  Fed. R. Civ. P. 8(a)(1).  If pleadings fail to state a claim, in whole or in part, on which a court may grant relief, a defendant may seek to dismiss a complaint under Federal

Rule of Civil Procedure 12(b)(6).  Fed. R. Civ. P. 12(b)(6).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal ("Iqbal"),

556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly ("Twombly"), 550

U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  Id.  Plausibility requires "more

than a sheer possibility that a defendant has acted unlawfully."  Id.  In considering

a motion to dismiss, the Court must assume the factual allegations contained in the

complaint to be true and draw all reasonable inferences in favor of the non-moving

party.  Twombly, 550 U.S. at 555–56.  However, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not

suffice" to state a claim.  Iqbal, 556 U.S. at 678; see Donald J. Kochan, While

Effusive, "Conclusory" is Still Quite Elusive: The Story of a Word, Iqbal, and a

Perplexing Lexical Inquiry of Supreme Importance, 73 U. Pitt. L. Rev. 215, 307

(2011) ("'[C]onclusory' sets a standard that requires a certain degree of case-by-

case, contextual analysis.").

    In patent infringement cases, allegations of infringement are governed by the

Iqbal/Twombly pleading standard.  Golden v. Apple Inc., 819 F. App'x 930, 930–

31 (Fed. Cir. 2020).  There must be some factual allegations that, when taken as

true, articulate why it is plausible that the accused product infringes the patent

claim. Bot M8 LLC v. Sony Corp. of America ("Bot M8"), 4 F.4th 1342, 1353

(Fed. Cir. 2021).

## DISCUSSION

## I.    Direct Infringement

Liability for direct infringement arises when a party "without authority

makes, uses, offers to sell, or sells any patented invention, within the United States

or imports into the United States any patented invention during the term of the

patent[.]" 35 U.S.C. § 271(a). To plead direct infringement, a plaintiff must recite

"some factual allegations that, when taken as true, articulate why it is plausible that

the accused product infringes the patent claim." Bot M8, 4 F.4th at 1353. "[A]

plaintiff cannot assert a plausible claim for infringement under the Iqbal/Twombly

standard by reciting the claim elements and merely concluding that the accused

product has those elements." Id. To satisfy the Iqbal pleading standard in a patent

case, "[s]pecific facts are not necessary[.]" Disc Disease Sols. Inc. v. VGH Sols.,

Inc., 888 F.3d 1256, 1260 (Fed. Cir. 2018) (quotation omitted). The complaint

needs to only give a defendant "fair notice of what the [infringement] claim is and

the ground upon which it rests." Id. (quotation omitted). A plaintiff must do more

than assert that the product infringes the claim to provide notice. Boston Sci. Corp.

v. Nevro Corp. ("Boston Sci. Corp."), 415 F. Supp. 3d 482, 489 (D. Del. 2019).

Notice is provided by showing "how the defendant plausibly infringes by alleging some facts connecting the allegedly infringing product to the claim elements." Id. (alteration omitted) (citing SIPCO, LLC v. Streetline, Inc., 230 F. Supp. 3d 351, 353 (D. Del. 2017).

RingCentral argues that Counts I–IV, concerning the use of Apache Kafka in the Accused Products, should be dismissed because the factual allegations in the First Amended Complaint are contradictory, speculative, and fail to provide sufficient notice of how RingCentral infringes the Asserted Patents. Def.'s Br. at 4–10. RingCentral states that Arlington Tech. fails to give factual support for its allegations that RingCentral uses Apache Kafka streams and that many of the allegations are based on speculation that a review of confidential source code will show infringement. Id. at 5–6. RingCentral asserts that Counts V–VIII should be dismissed because Arlington Tech. failed to plausibly plead claims for relief due to contradictory statements. Id. at 10–11. RingCentral claims that the First Amended Complaint does not specify the Accused Products and that its allegations are indiscernible due to many mistakes. Id. at 11. Arlington Tech. argues that all Counts in the First Amended Complaint satisfy the pleading standard and provide facts to support claims for direct infringement. See Pl.'s Resp. Br. at 5, 12. Arlington Tech. claims that none of the errors that RingCentral identified in the First Amended Complaint warrant dismissal. Id. at 12.

### A.    Counts I–IV

### i.    Apache Kafka vs. Apache Kafka Streams

Arlington Tech. alleges that RingCentral licenses[1] Apache Kafka and the "incorporation of Apache Kafka" in the Accused Products is what infringes the Asserted Patents.  Am. Compl. at ¶¶ 51, 70, 89, 107.  In Counts I–IV, Arlington Tech. alleges that RingCentral uses Apache Kafka, including Apache Kafka streams, in Defendant's Webinar and RingSense Accused Products.  Id. at ¶¶ 52, 71, 90, 108.  RingCentral claims that Counts I–IV allege infringement by Apache Kafka streams, but argues that Arlington Tech. provides no evidence that RingCentral uses Apache Kafka Streams.  Def.'s Br. at 5.  RingCentral states that the open-source licensing links referred to in the First Amended Complaint do not show that RingCentral uses Apache Kafka streams.  Id.  In response, Arlington Tech. claims that RingCentral's attribution pages confirm its use of Apache Kafka and Apache Kafka streams in the Accused Products.  Pl.'s Resp. Br. at 5.  Arlington Tech.'s response brief attached "RingCentral's RGA 3rd Party License Report" as an exhibit to show what Arlington Tech. relied upon at the time of filing the First Amended Complaint.  Id. at 5–6, n.1; see Pl.'s Resp. Br. at Ex. 1

---

[1]  Plaintiff references RingCentral's admission in the first Motion to Dismiss that it licenses Apache Kafka.  Am. Compl. at ¶ 51, n.3; Def. RingCentral, Inc.'s Opening Br. Supp. Mot. Dismiss (D.I. 10) at 3 ("Nor can RingCentral be said to possess the requisite specific intent, as it is licensed to use Apache Kafka—free, open-source software.").

(D.I. 22-1). The First Amended Complaint includes exemplary images of the open-source licenses that Arlington Tech. claims are publicly available sources that show that the Accused Products incorporate Kafka software such as "kafka Stream Compute," "Kafka Clusters[,]" "[kafka]-clients," "spring-kafka," "kafka," and "kafkajs[.]" Pl.'s Resp. Br. at 6; see Am. Compl. at ¶¶ 51, 70, 89, 107.

RingCentral notes that Counts I and II allege infringement of the '110 and '141 Patents by Apache Kafka streams, but argues that Plaintiff failed to offer supporting facts for these claims. Def.'s Br. at 5. Arlington Tech. argues that RingCentral attempts to manufacture contradictory allegations and mischaracterize the First Amended Complaint because "Arlington's allegations regarding the '110 and '141 patents relate to Apache Kafka features, not Kafka streams features." Pl.'s Resp. Br. at 7.

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 664. Counts I–IV all include annotated images that identify the words "Kafka," "Kafka Stream Compute," and "Kafka Cluster" on images attributable to RingCentral, and "Open Source Usage" links from RingCentral that mention Kafka components. See Am. Compl. at ¶¶ 51, 70, 89, 107. Counts I–IV allege that "Defendant uses Apache Kafka, including Apache kafka streams, in the Accused Products," but do not include, reference, or attach as

an exhibit the "RGA 3rd Party License Report" that Arlington Tech. claims it

relied upon at the time of filing.  Id. at ¶¶ 52, 71, 90, 108; Pl.'s Resp. Br. at 5–6.

Arlington Tech. later conceded at oral argument that Counts I and II mistakenly

referenced Apache Kafka streams and requested leave to amend if deemed

necessary by the Court.  See Oral Arg. Tr. (D.I. 35) at 36:4–36:5, 38:5–38:10,

40:2–40:13.

      Specific facts are not necessary at the pleading stage, but there must be fair

notice to the defendant of what the claim is and the grounds upon which it rests.

Bot M8, 4 F.4th at 1353 (quoting Erickson v. Pardus, 551 U.S. 89, 93 (2007)).  The

Court concludes that Arlington Tech.'s factual allegations regarding RingCentral's

use of Apache Kafka streams and which of the Asserted Patents are allegedly

infringed by Apache Kafka streams are not well pled.  For example, Counts I–IV

include direct infringement claims alleging that Defendant uses Apache Kafka

streams, but only Counts III and IV explain the alleged infringement with

exemplary images from Apache Kafka streams and discuss of how RingCentral's

use of Kafka streams reads on claim elements of the '945 and '836 Patents.  Am.

Compl. at ¶¶ 92–95, 110–13.  Arlington Tech.'s own concessions at oral argument

show that the First Amended Complaint could be clearer in its allegations

regarding RingCentral's use of Apache Kafka streams.  Although Arlington Tech.

claims in its brief that it relied on a "RGA 3rd Party License Report" when filing

its First Amended Complaint, this supporting documentation was not filed with the

First Amended Complaint.  Pl's Br. at 6, n.1; see Fed. R. Civ. P. 10(c) ("A copy of

a written instrument that is an exhibit to a pleading is a part of the pleading for all

purposes.").  The Court concludes that Counts I–IV are not sufficiently pled

regarding RingCentral's use of Apache Kafka or Apache Kafka streams to allow

the Court to draw a reasonable inference that RingCentral's products infringe the

Asserted Patents.  The Court dismisses Counts I–IV and will grant Plaintiff leave

to amend Counts I–IV to attempt to rectify the identified issues.

> ii.      **Source Code**

Arlington Tech states that the Accused Products' use of Apache Kafka and

Apache Kafka streams "will be further evidenced in the source code which is not

publicly available."  Am Compl. at ¶¶ 52, 71, 90, 108.  The First Amended

Complaint quotes WiTricity Corp. v. Momentum Dynamics Corp. ("WiTricity"),

563 F. Supp. 3d 309 (D. Del. 2021) to support this claim.  Id.  RingCentral calls

this argument speculative and insufficient to meet the pleading standard.  Def.'s

Br. at 6.  RingCentral distinguishes the facts in WiTricity and Dermafocus LLC v.

Ulthera, Inc., ("DermaFocus") 201 F. Supp. 3d 465 (D. Del. 2016) from this case

because Arlington Tech. has not attached claim charts to the First Amended

Complaint and is justifying insufficient pleading by pointing to future discovery of

RingCentral's source code.  See Def.'s Reply Br. at 3.

The First Amended Complaint quotes <u>WiTricity</u>'s statement that "[indeed], 'it may not be possible for a plaintiff to describe its case-in-chief with particularity at the outset of litigation, without access to the accused method, the accused apparatus for reverse engineering, or confidential data such as source code.'" 563 F. Supp. 3d at 328 (quoting <u>DermaFocus</u>, 201 F. Supp. 3d at 469, n.3.)).  The <u>WiTricity</u> case is distinguishable because in that case, claim charts were attached to the complaint, while here no claim charts were attached to the First Amended Complaint.[2]  <u>Id.</u>  "[A] defendant has greater access to and, therefore, more information about its accused method[,]" and "[t]he degree of public information about any accused method varies widely[.]"  <u>Dermafocus</u>, 201 F. Supp. 3d at 469. It is possible that access to source code will help Arlington Tech. to strengthen its allegations, but the Court has identified issues in Plaintiff's pleading in Counts I–IV that must be addressed to plausibly plead a claim for relief.

For Counts I–IV, the First Amended Complaint states that RingCentral infringes Claim 1 of the respective Asserted Patents, directly quotes each element

---

[2]  The First Amended Complaint alleges facts of extensive pre-suit communications with Defendant regarding the Asserted Patents and the Accused Products' alleged infringement.  Am. Compl. at ¶¶ 18–34.  Detailed factual allegations regarding when and how claim charts were downloaded by "Defendant and/or Defendant's agents" are pled, which the Court takes as true at the pleading stage when considering the claims for relief.  <u>Id.</u>  However, notably, no claim charts were attached as exhibits to the filing of the First Amended Complaint to add further support to Plaintiff's allegations or more clearly illustrate Plaintiff's arguments.  <u>See</u> <u>generally</u> <u>id.</u>

of Claim 1, and provides corresponding examples of how the Accused Product reads on each element of the claim. Am. Compl. at ¶¶ 54–59, 73–78, 92–96, 110–14. Arlington Tech. states that this discussion of each Accused Products' technology with exemplary materials provides context for the allegations. Id. at ¶¶ 59, 78, 96, 114. RingCentral argues that Arlington Tech. fails to adequately allege any specific action taken by RingCentral establishing that the Accused Products infringe the Apache Kafka Patents. Def.'s Br. at 10. Arlington Tech. maintains that "[i]f Apache Kafka systems infringe a patent and RingCentral uses Apache Kafka, then it follows that RingCentral infringes the patent." Pl.'s Resp. Br. at 11–12. Arlington Tech.'s allegations focus on exemplary images from Apache Kafka or Kafka streams rather than RingCentral. Am. Compl. at ¶¶ 54–58, 73–77, 92–95, 110–13. Plaintiff essentially argues a two-step theory: 1) Apache Kafka and Apache Kafka streams infringe the Asserted Patents, and 2) RingCentral uses Apache Kafka and Apache Kafka streams and thus infringes the Asserted Patents.

This case presents a unique situation in which Plaintiff is not suing the licensor of an allegedly infringing product for infringement, but instead is suing the licensee for using the licensed product in an infringing way. Cf. Carborundum Co. v. Molten Metal Equip. Innovations, Inc., 72 F.3d 872, 878 (Fed. Cir. 1995) ("A patent grants its owner the right to exclude others from making, using, or selling

the patented invention.  35 U.S.C. § 154 (1988).  However, all or part of the right

to exclude may be waived by granting a license, which may be express or

implied.").  Arlington Tech. does not make allegations of joint infringement and

only alleges that RingCentral's use and incorporation of Apache Kafka infringe the

Asserted Patents.  See Am. Compl. at ¶¶ 51, 70, 89, 107.

A complaint's factual allegations must articulate why it is plausible that the

accused product infringes the patent claim.  Bot M8, 4 F.4th at 1353.  Statutory law

broadly defines direct patent infringement as "whoever without authority makes,

uses, offers to sell, or sells any patented invention . . . during the term of the

patent . . . "  35 U.S.C. § 271(a).  Even when the Court takes Arlington Tech.'s

factual allegations as true that RingCentral uses Apache Kafka and Kafka streams

in the Accused Products and that Apache Kafka and Kafka streams infringe the

Asserted Patents, the Court has identified deficiencies in the pleadings about

RingCentral's use of Apache Kafka streams.  Arlington Tech. informed the Court

that Counts I and II should only allege use of Apache Kafka, whereas Counts III

and IV allege use of Apache Kafka and Apache Kafka streams.  Oral Arg. Tr. at

40:6–40:8, 40:14–40:19.  As described above, these mistakes amount to a pleading

deficiency that impacts the clarity of Arlington Tech.'s pleading of Counts I–IV.

Given the context of the case and the pleading issues identified above in the First

Amended Complaint, Arlington Tech. has not filed a sufficient complaint for the

Court to consider its allegations.  See Bot M8, 4 F. 4th at 1352 (quoting Twombly

556 U.S. at 679) ("Determining whether a complaint states a plausible claim for

relief [is] a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense.").

The Court in Boston Sci. Corp. dismissed direct infringement claims when a

plaintiff failed to provide fair notice when the complaint asserted without

explanation that the accused products met each element of at least one claim of the

asserted patent.  See 415 F. Supp. 3d 482, 489–90 (D. Del. 2019).  Arlington Tech.

identified the Accused Products and explained how each product reads on each

element of at least one claim of the corresponding Asserted Patent; however, the

First Amended Complaint lacks clarity in connecting RingCentral's Accused

Products to Apache Kafka and Apache Kafka Streams.  The Court concludes that

Counts I–IV do not state claims for direct infringement that pass the

Iqbal/Twombly standard in their current state and will dismiss Counts I–IV.

Arlington Tech. has requested the opportunity to amend Counts I–IV, and the

Court will permit leave to amend.

### B.    Counts V–VIII

For Counts V and VIII, the First Amended Complaint states that

RingCentral infringes Claim 1 of the respective Asserted Patents, directly quotes

each element of Claim 1, and provides corresponding examples of how the

Accused Products read on each element of the claim.  Am. Compl. at ¶¶ 127–32, 183–86.  For Counts VI and VII, Arlington Tech. alleges that RingCentral's products infringe Claim 8 of their respective Asserted Patents.  Id. at ¶¶ 145, 166. Count VI directly quotes the elements of Claim 8 and provides examples of how the Accused Products read on each element.  Id. at ¶¶ 145–53; see '733 Patent at 15:22–53.  However, Count VII directly quotes Claim 1 of the '517 Patent.  Id. at ¶ 166–70; see '517 Patent at 10:60–11:7.  RingCentral identifies this as a plausibility failure within the pleadings.  Def.'s Br. at 10–11.  Arlington Tech. does not dispute that Count VII addresses Claim 1's limitations of the '517 Patent rather than Claim 8, but argues that this is a minor typographical error.  Pl.'s Resp. Br. at 12.

The First Amended Complaint refers erroneously to Exhibit 8 as a true and correct copy of the '572 Patent that is discussed throughout Count VIII.  Am. Compl. at ¶¶ 43, 176–90.  Exhibit 8 is not a copy of the '572 Patent but a copy of the '517 Patent.  '517 Patent.  Exhibit 9 provides a copy of the '572 Patent.  '572 Patent.  RingCentral believes this error goes to the plausibility of Arlington Tech.'s allegations, and Arlington Tech. claims that these complaints from Defendant are without substance.  Def.'s Br. at 11; Pl.'s Resp. Br. at 13.  Considering the errors in referring to the incorrect patent, Arlington Tech. requested leave to amend the

identified errors and RingCentral did not oppose.  Oral Arg. Tr. at 30:15–30:25,

31:1–31:5, 55:23–55:24.

  The Court concludes that Counts V, VI, and VIII plausibly state claims of

relief for direct infringement that satisfy the pleading standard because Arlington

Tech. identified the Accused Products and explained element-by-element how they

infringe a claim in the Asserted Patents with sufficient factual allegations.

However, Count VII is not sufficiently pled due to the errors noted above in

referring to the wrong patent.  Id. at ¶¶ 166–70.  Arlington Tech.'s inaccurate

identification of the Asserted Patent's claim is more than a typographical error

because it is a substantive mistake that makes the pleading insufficient to assess

plausibility.  See Boston Sci. Corp., 415 F. Supp. 3d at 490 (stating that neither a

defendant nor a court should have to comb through pages of exhibits to understand

the bases of a plaintiff's claims and to determine if they state facts sufficient to

demonstrate a plaintiff's entitlement to relief).

  The Court concludes that Arlington Tech. has met the Iqbal/Twombly

standard to defeat a motion to dismiss and has plausibly pled direct infringement

for Counts V, VI, and VIII.  The First Amended Complaint provides detailed

explanations with exemplary materials to explain how the Accused Products

infringe each element of the Asserted Patents' claims.  The Court concludes that

Arlington Tech.'s First Amended Complaint has provided RingCentral with fair

notice of direct infringement for Counts V, VI, and VIII and denies the motion to

dismiss as to Counts V, VI, and VIII.  The Court dismisses Count VII and will

grant Plaintiff leave to amend the errors in Count VII.

### C.    Futility of Granting Leave to Amend Counts I–IV

RingCentral asks that the Court dismiss Counts I–IV with prejudice on the

theory that further amendment would be futile.  Def.'s Br. at 21.  RingCentral

claims that Arlington Tech. has conceded that the direct infringement allegations

rest on speculation and cannot describe the claims with particularity absent source

code.  Id. at 22.  Arlington Tech. argues that it pled plausible claims of direct,

induced, contributory, and willful infringement for each Asserted Patent but

requests leave to amend in the alternative if necessary.  See Pl.'s Resp. Br. at 23.

Federal Rule of Civil Procedure 15(a)(2) provides that the court should

freely give leave to amend pleadings when justice so requires.  Fed. R. Civ. P.

15(a)(2).  It is within the Court's discretion whether to grant leave to amend

pleadings.  See Advanced Cardiovascular Sys., Inc. v. Medtronic, Inc., 265 F.3d

1294, 1303 (Fed. Cir. 2001) ("[W]e will apply our own law to both substantive and

procedural issues 'intimately involved in the substance of enforcement of the

patent right.' . . . [W]e review the district court's refusal to allow [] amendment to

the pleadings under Federal Circuit law.  Decisions concerning the amendment of

pleadings are reviewed by this court under the abuse of discretion standard.").

The Court has identified problems with Arlington Tech.'s First Amended Complaint, but will allow another opportunity for Plaintiff to try to cure the defects in its pleading.  If the Second Amended Complaint is again deficient, the Court will consider whether another attempt at amending the complaint would be futile and whether dismissal with prejudice would be appropriate.

## II.    Indirect Infringement

In resolving whether indirect infringement is pled properly, the Court must first determine whether Plaintiff sufficiently alleged direct infringement of the Asserted Patents.  See In Re Bill of Lading Transm'n and Processing Sys. Patent Litig. ("In Re Bill of Lading"), 681 F.3d 1323, 1333 (Fed. Cir. 2012) ("It is axiomatic that there can be no inducement or contributory infringement without an underlying act of direct infringement.") (internal quotation marks omitted).  As discussed above, Plaintiff has only pled direct infringement adequately for Counts V, VI, and VIII, and the Court proceeds to examine the indirect infringement claims on those Counts.

### A.    Induced Infringement

To plead induced infringement under 35 U.S.C. § 271(b), a complaint must plead facts plausibly showing that the accused infringer specifically intended another party to infringe the patent and knew that the other party's acts constituted infringement.  Lifetime Indus., Inc. v. Trim-Lok, Inc., 869 F.3d 1372, 1379 (Fed.

Cir. 2017); see also 35 U.S.C. § 271(b) ("Whoever actively induces infringement of a patent shall be liable as an infringer.").  A plaintiff is required to allege facts supporting a reasonable inference that the defendant had knowledge of the patent-in-suit.  Global-Tech Appliances, Inc. v. SEB S.A. ("Global-Tech"), 563 U.S. 754, 764–66 (2011).  "[U]nlike direct infringement, the patentee must show that the accused inducer took an affirmative act to encourage infringement with the knowledge that the induced acts constitute patent infringement."  Microsoft Corp. v. DataTern, Inc., 755 F.3d 899, 904 (Fed. Cir. 2014) (citing Global-Tech, 563 U.S. at 764–66).  Without knowledge of infringement, there is not enough to establish liability for induced infringement.  See Global-Tech, 563 U.S. at 765–66.  The U.S. Supreme Court reaffirmed its holding in Global-Tech and clarified that proof of induced infringement requires not only knowledge of the patent, but also proof that the defendant "knew as well that 'the induced acts constitute patent infringement.'"  Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 640 (2015) (citing Global-Tech, 563 U.S. at 766).

Specific intent is a distinct element from the knowing inducement of infringing acts.  "A party asserting a claim of induced infringement must plead facts plausibly demonstrating that there has been direct infringement, and that 'the alleged inducer knew of the patent, knowingly induced the infringing acts, and possessed a specific intent to encourage another's infringement of the patent.'"

Tonal Sys., Inc. v. ICON Health & Fitness, Inc., No. 20-cv-1197-LPS, 2021 WL
1785072, at *3 (D. Del. May 5, 2021) (quoting Vita-Mix Corp. v. Basic Holding,
Inc. ("Vita-Mix"), 581 F.3d 1317, 1328 (Fed. Cir. 2009)).

      If actual knowledge is not adequately pled, a patentee can establish
knowledge of patent infringement by alleging that the defendant was willfully
blind, which requires showing that the defendant: (1) subjectively believed that
there was a high probability that the induced acts constituted infringement; and
(2) took deliberate actions to avoid learning of that fact. Global-Tech, 563 U.S. at
769.

      RingCentral claims that all the indirect infringement claims should be
dismissed. Def.'s Br. at 11. RingCentral argues that Arlington Tech. failed to
plausibly allege knowledge of infringement of the Asserted Patents or willful
blindness. Id. at 12–15. Most of Defendant's knowledge arguments focus on
Counts I–IV. See id. For Counts V, VI, and VIII, RingCentral argues that
Arlington's allegations of induced infringement are conclusory and implausible.
Id. at 15, 18. RingCentral states that the allegations "[point] only to RingCentral's
general product webpages" and restate "insufficient infringement allegations." Id.
at 18. Arlington Tech. claims that it plausibly pled induced infringement with
specific factual allegations from RingCentral's own materials, detailed facts of pre-

suit communications, and evidence of affirmative acts of inducement.  See Pl.'s

Resp. Br. at 1, 14, 18.

Plaintiff provides a chronology of its pre-suit communications with

RingCentral beginning on March 8, 2024.  Am. Compl. at ¶¶18–34.  Plaintiff

argues that the detailed account of pre-suit contact with RingCentral about

infringement adequately pleads the requisite knowledge.  Pl.'s Resp. Br. at 14–15.

Plaintiff alleges that it sent a letter to RingCentral that identified the Accused

Products and Patents, provided detailed evidence-of-use charts, met with

RingCentral and explained the alleged infringement, and executed a non-disclosure

agreement for continued discussions.  Id.  Plaintiff refers to RingCentral's

marketing and sales materials to show that Defendant took affirmative acts of

inducing infringement.  Id. at 18–19; see Am. Compl. at ¶¶ 134, 155, 188.

Regarding all of Plaintiff's allegations as true, the Court concludes that it is

plausible that RingCentral had pre-suit knowledge by March 8, 2024.  See Am.

Compl. at ¶ 18.  For Counts V, VI, and VIII, the First Amended Complaint states

that Defendant has known of the Asserted Patent "and Plaintiff's theories of

infringement prior to the Original Complaint being filed," and Plaintiff pled

sufficient facts to show that claim is plausible.  Id. at ¶¶ 133, 154, 187.  Plaintiff

pled sufficient facts about Defendant receiving communications about the Accused

Products and Patents in multiple forms.  See id. at ¶¶18–34.  The First Amended

Complaint also alleged that Defendant continues to advertise, market, and sell the Accused Products and provide instructions, technical support, and services for buyers of the Accused Products online.  Id. at ¶¶ 134, 155, 188.  Continuing to advertise, market, or sell the Accused Products after being put on notice multiple times regarding the potential infringement establishes a plausible claim of specific intent on behalf of RingCentral for induced infringement.  The Court concludes that the factual allegations in Counts V, VI, and VIII of the First Amended Complaint plausibly pled claims that Defendant had knowledge of the Asserted Patents, notice of its possible infringement, and continued to take affirmative action that induced infringement.

### B.    Contributory Infringement

Under 35 U.S.C. § 271(c), selling an apparatus for use in practicing a patented method, while knowing it to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, is contributory infringement. See 35 U.S.C. § 271(c); Vita-Mix, 581 F.3d at 1327.  Contributory infringement occurs if a party sells or offers to sell a material or apparatus that has no substantial non-infringing uses.  See In Re Bill of Lading, 681 F.3d at 1337.  A substantial non-infringing use is a use that is "not unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental."  Vita-Mix, 581 F.3d at 1327.  If the accused

products are "undisputedly capable of non-infringing use," the question turns on whether the non-infringing use is substantial. Id. at 1327. Formal claim construction is not required to reach the conclusion that a complaint establishes that products can be used for non-infringing purposes. In re Bill of Lading, 681 F.3d at 1339.

Defendant argues that Arlington Tech. fails to provide any factual support for a claim of contributory infringement and simply recites the elements of contributory infringement. Def.'s Br. at 19. Arlington Tech. does not specifically mention contributory infringement in its prayer and thus RingCentral argues that the claim should be dismissed. Def.'s Br. at 19–20. Plaintiff argues that it plausibly pled contributory infringement and does not need to prove the absence of all hypothetical non-infringing uses at the pleading stage. Pl.'s Resp. Br. at 20–21. The First Amended Complaint claims that the Accused Products operate in an infringing manner and RingCentral contributes to further infringement through the distributors, customers, subsidiaries, importers, and consumers of the Accused Products. Am. Compl. ¶¶ 135, 156, 189.

Arlington Tech. claims that the Video Meetings and Rooms products implement a "custom hierarchal ranking structure which enables enhanced video conferencing," a "custom meeting publishing system that records meetings and enables authorized access to non-invitee co-workers," and a "custom multi-user

screen sharing feature." Id.  These custom features are allegedly made and adapted

to perform functions that infringe the Asserted Patents.  See id.  Arlington Tech.

alleges specific substantial infringing uses for the Accused Products.  Id.  It is

reasonable to infer from Arlington Tech.'s allegations that RingCentral is selling

Accused Products that have no substantial non-infringing use, while knowing the

risk of possible infringement.  Viewing the facts alleged in the First Amended

Complaint in the light most favorable to Plaintiff, the Court concludes that the

allegations are enough to create a reasonable likelihood that discovery may reveal

evidence of how the Accused Products fail to have any non-infringing use.  See

Twombly, 550 U.S. at 556.  The Court concludes that Plaintiff has sufficiently pled

a claim for contributory infringement as to Counts V, VI, and VIII.

### III.    Willful Infringement/Enhanced Damages

Under 35 U.S.C. § 284, the Court may increase the amount of damages

assessed by up to three times.  35 U.S.C. § 284.  The U.S. Supreme Court has

observed that enhanced damages:

> are not to be meted out in a typical infringement case, but are instead
> designed as a "punitive" or "vindictive" sanction for egregious
> infringement behavior.  The sort of conduct warranting enhanced
> damages has been variously described in our cases as willful, wanton,
> malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—
> indeed—characteristic of a pirate.

Halo Elecs., Inc. v. Pulse Elecs. Inc. ("Halo"), 579 U.S. 93, 103–04 (2016).  For

willful infringement claims, "the patentee must allege facts in its pleading

plausibly demonstrating that the accused infringer had committed subjective

willful infringement as of the date of the filing of the willful infringement claim[.]"

Välinge Innovation AB v. Halstead New England Corp. ("Välinge Innovation

AB"), No. 16-cv-1082-LPS-CJB, 2018 WL 2411218, at *12 (D. Del. May 29,

2018), report and recommendation adopted, No. 16-cv-1082-LPS-CJB, 2018 WL

11013901 (D. Del. Nov. 6, 2018).  "The subjective willfulness of a patent

infringer, intentional or knowing, may warrant enhanced damages, without regard

to whether his infringement was objectively reckless."  Halo, 579 U.S. at 105; see

WBIP, LLC v. Kohler Co., 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of

the patent alleged to be willfully infringed continues to be a prerequisite to

enhanced damages.").  Subjective willfulness may be found when "the risk of

infringement 'was either known or so obvious that it should have been known to

the accused infringer.'"  Halo, 579 U.S. at 101 (quoting In re Seagate Techs., LLC,

497 F.3d 1360, 1371 (Fed. Cir. 2007)).

     At the pleading stage, this standard can be distilled into three elements, that

the accused infringer: (1) was aware of the patent; (2) infringed the patent after

becoming aware of its existence; and (3) knew or should have known that its

conduct amounted to infringement.  See Välinge Innovation AB, 2018 WL

2411218, at *13.  The Court need not evaluate whether each allegation, taken

alone, gives rise to a reasonable inference of pre-suit knowledge of the patent, but

may consider the allegations as a whole.  Elm 3DS Innovations, LLC v. Samsung

Elecs. Co., Ltd., No. 14-cv-1430-LPS-CJB, 2015 WL 5725768, at *3 (D. Del.

Sept. 29, 2015), report and recommendation adopted, No. 14-cv-1430-LPS-CJB,

2016 WL 1274812 (D. Del. Mar. 21, 2016); SoftView LLC v. Apple Inc., No. 10-

cv-389-LPS, 2012 WL 3061027, at *6 (D. Del. July 26, 2012).

       Defendant claims that Arlington Tech. did not plead sufficient knowledge to

state a claim for willful infringement and that the allegations are conclusory.

Def.'s Br. at 20–21.  Plaintiff responded that it pled extensive pre-suit knowledge

in the First Amended Complaint and that the allegations meet the pleading

standard.  Pl.'s Resp. Br. at 22–23.  In its reply brief, Defendant argued that the

Court should strike the willful infringement claim, pursuant to Federal Rule of

Civil Procedure Rule 12(f) in light of the Court's Memorandum in Inari Med., Inc.

v. Inquis Med., Inc. [3] ("Inari Med"), No. 24-cv-1023-CFC, 2025 WL 2912857 (D.

Del. Oct. 14, 2025).  Def.'s Reply Br. at 10–11.

       The Court concluded above that Plaintiff pled sufficient factual allegations

---

[3]  The Court in Inari Med stated that "[r]egardless of whether a demand for
enhanced damages under § 284 is based on willful conduct or on behavior that is
wanton, malicious, deliberate, consciously wrongful, flagrant, done in bad faith, or
characteristic of a pirate, such a demand is not a claim that can be dismissed
pursuant to Rule 12(b)(6)."  2025 WL 2912857 at *4.  The Court stated that
enhanced damages are relief that can be granted upon a claim of direct, induced, or
contributory infringement, and are not a claim upon which relief can be granted.
Id.

in Counts V, VI, and VIII that Defendant plausibly knew of the Asserted Patents

and infringement from at least March 8, 2024.  Am. Compl. at ¶¶ 18–34, 133, 154,

187.  Taking all allegations as true, Plaintiff sufficiently alleged facts to indicate

that Defendant had pre-suit knowledge of the Asserted Patents and may have

knowingly infringed the Asserted Patents.  The Court will not consider striking the

claim under Rule 12(f) because Defendant has failed to show that the pleading is

redundant, immaterial, impertinent, or scandalous in nature.  See Fed. R. Civ. P.

12(f) ("The court may strike from a pleading an insufficient defense or any

redundant, immaterial, impertinent, or scandalous matter.").

Accordingly, the Court grants Defendant's Motion to Dismiss on the direct,

indirect, and willful infringement claims in Counts I, II, III, IV, and VII.  The

Court denies Defendant's Motion to Dismiss on the direct, indirect, and willful

infringement claims in Counts V, VI, and VIII.  The Court grants Plaintiff leave to

amend its First Amended Complaint.

## CONCLUSION

Upon consideration of Defendant's Motion to Dismiss (D.I. 19), and all

other papers and proceedings in this action, it is hereby

**ORDERED** that Defendant's Motion to Dismiss (D.I. 19) is granted in part

and denied in part; and it is further

**ORDERED** that Plaintiff shall file a Second Amended Complaint on or

Court No. 1:25-cv-00613                                                      Page 35

before March 24, 2026; and it is further

      **ORDERED** that Defendant shall file a response on or before April 7, 2026.

      IT IS SO ORDERED this 10th day of March, 2026.


  /s/ Jennifer Choe-Groves  
Jennifer Choe-Groves
U.S. District Court Judge[*]

---

[*]Judge Jennifer Choe-Groves, of the United States Court of International Trade, sitting by designation.